FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2018 MAY 10 PH 2: 28

Case No. _____

CHARLES S. RODRIGUEZ, on behalf
of himself and all others similarly situated,

6:18-cv-721-Orl-41 TBS

     Plaintiff,

v.

DITECH FINANCIAL, LLC and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

     Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Charles S. Rodriguez ("Plaintiff"), on behalf of himself and all others similarly

situated, alleges violations of the Florida Consumer Collection Practices Act § 559.55 *et seq.*

("FCCPA"), the Fair Debt Collection Practices Act 15 U.S.C. 1692 *et seq.* ("FDCPA"), against

Ditech Financial, LLC ("Ditech") and violation of the Truth In Lending Act 15 U.S.C. § 1601 *et*

*seq.* ("TILA") against Federal National Mortgage Association ("FNMA").

     1.     In the last (10) years, over 960,000 homes in Florida alone were foreclosed on.

*See* Ex. A, United States Residential Foreclosure Crisis: Ten Years Later, CoreLogic (March

2017). Although the foreclosure rates are lower now than at their peaks in 2010-2011, there are

still a significant percentage of homeowners more than 90 days behind on their mortgage

payments. *Id.* A foreclosure affects not only the borrower, but also neighbors because just one

foreclosure can cause a 2-3% decline in value of homes within a 1/8th mile vicinity.

http://www.flagpinrealty.com/Articles/Sheltering%20Neighborhoods%20from%20the%20Subpr

ime%20Foreclosure%20Storm.pdf.

1

2.       Recognizing this devastating effect, Congress enacted the FDCPA and TILA, and the Florida Legislature enacted the FCCPA.  These statues provide consumers a private right of action to ensure mortgage servicers give defaulted borrowers accurate and clear information. The most important information is a clear statement of the amount of debt owed. Ditech, on the other hand, frustrates the borrower's ability to stop a foreclosure by giving them opaque disclosures that cause confusion.

3.       Ditech charges borrowers improper fees that are disguised to look legitimate. In this case, Ditech generically labeled drive-by property inspections as "Corp Adv Disb" fees on a borrower's mortgage statements instead of what these fees are.  The result is that Ditech can charge drive-by property inspections at an inappropriate and unreasonable frequency without notice or dispute from the borrower.

4.       Indeed, Ditech is incentivized to keep borrowers in foreclosure because, while the amount charged is relatively small, the profit generating mark-up on the fees charged and repetitive nature in which the disguised fees are charged results in Ditech reaping thousands of dollars in profit from borrowers who are unlikely to challenge the fee when fighting to save their home.

5.       By the conduct described above, Ditech knowingly violated the FCCPA and FDCPA. Fannie Mae is also liable for Ditech's violation of TILA, which has caused Plaintiff and putative class members actual concrete and particularized injuries.

**JURISDICTION AND VENUE**

6.       The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of TILA and the FDCPA, federal statutes.

7.      The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the TILA and FDCPA federal claims involve the same debt collection practices that form the basis of the FCCPA claims.

8.      The Court has personal jurisdiction because Defendants conduct business throughout the United States, including Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district where they are subject to personal jurisdiction at the time the action is commenced and because their contacts with this District are sufficient to subject them to personal jurisdiction.

## PARTIES

10.     Plaintiff Charles Rodriguez is a natural person who resides in Florida.

11.     Defendant Ditech is a Minnesota corporation with its headquarters in St. Paul, Minnesota. Defendant services mortgages throughout the United States and Florida.

12.     Defendant Fannie Mae is Delaware corporation with its principal place of business at 3900 Wisconsin Ave, N.W., Washington D.C. 20016.

## APPLICABLE LAW

**TILA**

13.     Congress enacted TILA to "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601(a); *Fabricant v. Sears Roebuck*, 98-1281-CIV, 2002 WL 34477592, at *4 (S.D. Fla. Mar. 6, 2002) ("TILA changed the philosophy in

the extension of credit from let the buyer beware to make the seller disclose.") (internal quotations and citations omitted).

14.     To further TILA's purpose, courts must "liberally construe the language [of the statute] in favor of the consumer." (*Id.*) (citations omitted).

15.     Under TILA, the creditor, assignee, or servicer must give a periodic statement to the borrower setting forth certain disclosures like: the amount due, explanation of amount due, and past payment breakdown. 15 U.S.C. § 1638 *et seq.,* 12 CFR § 1026.41 *et seq.*

16.     TILA requires information to be "disclosed clearly and conspicuously, in accordance with regulations of the Bureau." 15 U.S.C. § 1632(a).

17.     Regulation Z "is issued by the Bureau of Consumer Financial Protection to implement the Federal Truth in Lending Act." 12 CFR § 1026.1(a).

18.     Regulation Z "prohibits certain acts or practices in connection with credit secured by a dwelling in § 1026.36, and credit secured by a consumer's principal dwelling in § 1026.35." 12 CFR § 1026.1(b).

19.     Regulation Z imposes certain obligations on mortgage servicers and creditors to provide information to borrowers about their mortgage loans. *See* 12 CFR § 1026.31 *et seq.*

20.     Information under Regulation Z, Subpart E, must be given "clearly and conspicuously" to the borrower and the information "shall reflect the terms of the legal obligation between the parties." 12 CFR §§ 1026.31(b), (d)(1).

21.     TILA provides a private cause of action for violations of Regulation Z. *See* 15 U.S.C. § 1640(a); *cf.* 15 U.S.C. § 1639(p)(2)(A)("The Bureau, by regulation or order, shall prohibit acts or practices in connection with—mortgage loans that the Bureau finds to be unfair, deceptive, or designed to evade the provisions of this section…"); *McGowan v. King, Inc.*, 569 F.2d 845, 848

4

(5th Cir. 1978)("The scheme of the statute is to create a system of private attorneys general to aid its enforcement, and its language should be construed liberally in light of its remedial purpose.")

**FDCPA**

22.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

23.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

24.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

25.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

26.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

27.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

28.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

29.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

30.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See* generally Fla. Stat. § 559.72.

31.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

32.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

33.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

34.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

35.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

36.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

37.     On or about January 8, 2009, Plaintiff purchased a home in Orange County, Florida through a loan from Amtrust Bank, secured by a mortgage on the property. Copies of Plaintiff's Mortgage Note and Mortgage Agreement are attached as Exhibit "B" and Exhibit "C" respectively.

38.     On or about October 1, 2010, the Mortgage fell into default.

39.     On or about May 4, 2012, Mortgage Electronic Registration Systems, Inc., as Nominee for Amtrust Bank, its successors and/or Assigns, assigned the Note and Mortgage to FNMA.

40.     Several years later, on or about May 1, 2014, Everhome Mortgage transferred its servicing rights to Ditech, formally known as Green Tree Servicing, LLC, while the Note and Mortgage were in default.[1] Therefore, Ditech became the servicer of Plaintiff's Mortgage while it was already in default.

41.     Fannie Mae contracted with Ditech to service Plaintiff and the class members' mortgage loans.

42.     Ditech services the Plaintiff's Mortgage on behalf of Fannie Mae as its agent.

43.     As Fannie Mae's agent, Ditech must follow the Fannie Mae Single Family Servicing Guide ("Guidelines").

44.     The Guidelines only allow a servicer, like Ditech, to charge property inspections not more frequently than every twenty days. *See* Fannie Mae Single Family Servicing Guide D2-2-10.

---

[1] On or about May 18, 2012, Elizabeth Wellborn, P.A., on behalf of FNMA, filed a complaint in the Ninth Judicial Circuit in and for Orange County, Florida to initiate foreclosure of the Plaintiff's home. Plaintiff hired Smothers Law Firm, P.A. to defend him in the foreclosure.

45.     Recognizing this limitation, Ditech disguises the property inspection fees as "Corp Adv Disb" charges on the Plaintiff and the class members' monthly billing statements.

46.     Upon information and belief, Ditech pays much less than $15.00 per property inspection, keeping the overcharge as profit.

47.     Ditech then disguises the fees so it can charge them at a greater frequency than the Guidelines allow because Ditech earns a profit on the fees.

48.     On September 16, 2016, Ditech sent a billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "D".

49.     Under the heading "Transaction Activity Since Last Statement", Ditech charged Plaintiff a late fee and a $15.00 "Corp Adv Disb" on September 14, 2016. *Id.*

50.     Upon information and belief, the $15.00 "Corp Adv Disb" is actually a "drive-by" property inspection charge.

51.     Upon information and belief, the actual cost of a "drive-by" property inspection charge to Ditech is less than $15.00, meaning that every drive-by inspection charged by Ditech creates profit.

52.     Ditech demanded Plaintiff pay a total amount of $100,102.14, which included the $15.00 "Corp Adv Disb" charge. *Id.*

53.     Ditech provided no description on what default-related service the $15.00 charge represented.

54.     Directly adjacent, the September Statement advised:

**\*\*Delinquency Notice\*\***

**You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of September 16 you are 2177 days delinquent on your mortgage loan. Your account first became delinquent on 1010112010.**

8

*See* Ex. D.

55.     Ditech included a payment coupon for Plaintiff to detach and send with his payment. *Id.*

56.     On the payment coupon, Ditech again demanded a total amount of $100,102.14 and advised that it would charge a late fee if Plaintiff didn't pay. *Id.*

57.     On October 17, 2016, Ditech sent a billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "E".

58.     The October statement reflects that Ditech charged Plaintiff another $15.00 "Corp Adv Disb" on September 30, 2016, and it again added that fee to the total amount it demanded Plaintiff pay. *Id.*

59.     Therefore, Ditech charged Plaintiff for two property inspections within 14 days of each other, one on September 16, 2016 (Ex. D) and another on September 30, 2016 (Ex. E).

60.     On or about April 17, 2017, Ditech sent a billing statement to Smothers Law Firm P.A. on behalf of Plaintiff. The Billing Statement is attached as Exhibit "F".

61.     Under the heading "Transaction Activity Since Last Statement", Ditech charged Plaintiff a late fee and a $15.00 "Corp Adv Disb" on March 31, 2017. *Id.*

62.     Ditech demanded Plaintiff pay a total amount of $81,344.17, which included the $15.00 "Corp Adv Disb" charge. *Id.*

63.     Instead of labeling the charge as a "property inspection", Ditech chose to deceptively label the charge a "Corp Adv Disb", which is unclear, inconspicuous, false, and misleading practice.

64.     On or about July 17, 2017, Ditech sent another billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "G."

9

65.    Instead of labeling the charge as a "property inspection", Ditech again chose to deceptively label the charge a "Corp Adv Disb", which is unclear, inconspicuous, false, and misleading practice, especially because Ditech charged the Plaintiff a separate $200 "Corp Adv Disb" charge without any explanation on what the charge relates to. (*Id.*).

66.    Ditech acted as a debt collector by attempting to collect amounts on behalf of its principal, Fannie Mae.

67.    Ditech, on behalf of Fannie Mae, threatened to collect illegitimate charges from Plaintiff and the putative class.

68.    Ditech demanded Plaintiff pay these fees despite operating under strict servicing guidelines from Fannie Mae.

69.    Under the Guidelines, Ditech must "be aware of, and in full compliance with, all federal, state, and local laws (e.g., statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions)." And "[a]s applicable law can change quickly, and sometimes without widespread notice, the seller/servicer must establish appropriate facilities for monitoring applicable legal developments and implementing appropriate measures to stay in compliance with applicable law. ..." (emphasis added). *See* 2015 Fannie Mae Single Family Servicing Guide at 98, *available at* https://www.fanniemae.com/content/guide/svc040815.pdf.

70.    The Guidelines only allow Ditech to charge property inspections if: Quality Right Party Contact has not been achieved; a full payment has not been received within the last 30 days; or the borrower is not performing under the applicable bankruptcy plan. *Id* at 421-422 ( section D2-2-10).

71.    The Guidelines also prohibit Ditech from charging property inspections no sooner than twenty days apart. *Id.*

10

72.     Despite these specific prohibitions, Ditech nonetheless knowingly demanded Plaintiff pay an amount to cure a default that included illegitimate, and disguised, property inspection charges.

73.     Ditech's demands were a direct breach of each of the following contractual provisions permitting *only* recovery of amounts actually incurred: (1) Paragraph 9 of the Mortgage Agreement permitted Ditech to recover "***amounts disbursed***" in protecting Fannie Mae's interest and rights in the Mortgage Agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement prohibited Ditech from charging estimated fees, stating "*[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law*" (emphasis added); (3) Paragraph 22 of Fannie Mae's Mortgage Agreement permitted Ditech to collect "***expenses incurred in pursuing***" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of the Mortgage Note permitted Ditech, on behalf of Fannie Mae, the "***right to be paid back*** . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees" (emphasis added).

74.     Ditech demanded Plaintiff pay these illegitimate fees despite also operating under a Consent Order with the Consumer Financial Protection Bureau. The Consent Order is attached as Exhibit "H."

75.     The Order prohibits Ditech, Ditech's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

> Making any material misrepresentation or assisting others in making any material misrepresentation, expressly or by implication, including but not limited to misrepresentations …[t]hat consumers' loans have certain unpaid balances,

11

payment due dates, interest rates, monthly payment amounts, delinquency
statuses, and unpaid fees or other amounts due;

(*Id.* at 39-40).

76.     And further, the Order prohibits Ditech, Ditech's officers, agents, and employees,

and all other persons in active concert or participation with any of them, who receive actual notice

of this Order, whether acting directly or indirectly, in connection with collecting on past-due debt,

are permanently restrained and enjoined from:

Using any false, deceptive, or misleading representation or means, including but
not limited to falsely representing, directly or indirectly, expressly or by
implication: (1) the character, amount, or legal status of any debt... [and] [u]sing
any unfair or unconscionable means to collect or attempt to collect any debt,
including but not limited to collecting any amount unless such amount is
expressly authorized by the agreement creating the debt or permitted by law....

(*Id.* at 46-47).

77.     Ditech's President, Thomas J. Franco, signed the Order.

78.     Despite the Order's specific prohibitions, Ditech knowingly, and deceptively,

demanded Plaintiff pay illegitimate amounts not due and owing.

79.     Additionally, the CFPB has received hundreds of complaints about Ditech's

improper loan servicing practices, many involving similar complaints on requests for debt not

actually          owed.          https://www.consumerfinance.gov/data-research/consumer-

complaints/search/?company=Ditech%20Financial%20LLC&from=0&has_narrative=true&sear

chField=all&searchText=&size=25&sort=created_date_desc

80.     Ditech's knowledge can be imputed to Fannie Mae through agency theory. *See,*

*e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2, 2015) (finding

knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and

holder through principles of agency).

81.     Ditech and Fannie Mae have a pattern and practice of demanding illegal fees, and disguising those fees, because Plaintiff received a form letter from Ditech that has routinely generated line-items that included unlawful amounts.

82.     Ditech's letters are form letters as shown by the identification code: "W FL DEMAND." *Id.*

83.     On or about December 5, 2017, Plaintiff, through counsel, sent a cure letter to Ditech and Fannie Mae, attaching a draft of a class action complaint with the same allegations contained herein. See the letter attached as Exhibit "I."

84.     After a reasonable amount of time, the Plaintiff filed this lawsuit because Ditech and Fannie Mae didn't cure the breach of its violations of state and federal law.

85.     After Plaintiff made a demand and Defendant's failed to cure, Defendant Ditech sent *another* dunning letter to Plaintiff dated February 15, 2018. *See* Exhibit "J."

86.     The February 15, 2018 letter stated:

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-643-0202. Or call us via TDD at 1-800-643-0202 #711.

*Id.* at 2-3.

87.     The letter further advised:

**Ditech Financial LLC is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

*Id.* at 3 (emphasis in original).

13

88.     Ditech acted as a debt collector by attempting to collect amounts on behalf of its principal, Fannie Mae.

89.     Ditech chose not to follow the FDCPA's notice requirements because it didn't inform Plaintiff that any dispute of a debt must be in writing. *See* 15 U.S.C. § 1692g.

## ADDITIONAL FACTUAL ALLEGATIONS REGARDING PLAINTIFF'S INJURY CAUSED BY DEFENDANTS' FCCPA, FDCPA, AND TILA VIOLATIONS

90.     Plaintiff has a statutory right to receive accurate and timely information from Ditech on his monthly mortgage statements. Also, Plaintiff has a statutory right to receive a clear and conspicuous disclosure from Ditech about the fees and costs he is required to pay on his mortgage loan.

91.     By failing to respond with accurate information about the amounts owed under the mortgage loan, Ditech deprived Plaintiff of his statutory right to accurate information under the FDCPA, FCCPA, and TILA.

92.     By failing to send clear and conspicuous disclosure on the Plaintiff's periodic statements about the amounts owed by Plaintiff on his mortgage loan, Ditech deprived Plaintiff of his statutory right to clear and conspicuous disclosure under TILA.

## CLASS ACTION ALLEGATIONS

### Florida Class 1

93.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's TILA violations (the "Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech sent a periodic statement that charged, collected, or attempted to collect a $15.00 "Corp Adv Disb" fee for a property inspection during the applicable statute of limitations.

14

**Florida Class 2**

94.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's FCCPA and FDCPA violations (the "Florida Class 2"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech charged, collected, or attempted to collect a fee for a property inspection performed more frequently than twenty days apart during the applicable statute of limitations.

**Florida Class 3**

95.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's FDCPA violations (the "Florida Class 3"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech sent a periodic statement that charged, collected, or attempted to collect a $15.00 "Corp Adv Disb" fee during the applicable statute of limitations.

**Florida Class 4**

96.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's FDCPA violations (the "Florida Class 4"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech sent a "W FL DEMAND" that failed to notify the debtor that any dispute of the amount owed must be "in writing" during the applicable statute of limitations.

97.     Class members are identifiable through Ditech's records and payment databases.

98.     Excluded from the Class are Ditech; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

99.     Plaintiff proposes that he serve as class representative for the Class.

100.    Ditech's actions have harmed Plaintiff and the class members.

101.    Numerosity is satisfied. There are likely thousands of class members. Individual joinder of these persons is impracticable.

102.    There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

    a.  Whether Ditech is liable for its failure to comply with TILA by failing to provide accurate, clear, and conspicuous information in periodic statements;

    b.  Whether Ditech violated the FCCPA by charging monies not due;

    c.  Whether Ditech violated the FDCPA by charging monies not due;

    d.  Whether Plaintiff and class members are entitled to actual or statutory damages as a result of Ditech's actions;

    e.  Whether Plaintiff and class members are entitled to attorney's fees and costs; and

    f.  Whether Ditech should be enjoined from engaging in such conduct in the future.

106.    Plaintiff's claims are typical of the claims of the Classes.

107.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions.

16

108.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

109.    The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications concerning individual class members.

### COUNT I AS TO FANNIE MAE'S VIOLATION OF THE THE TRUTH IN LENDING ACT 15 U.S.C. § 1639g, (Florida Class 1)

110.    Fannie Mae is a creditor under TILA that can be held vicariously liable for Ditech's TILA violations. *See* 15 U.S.C. § 1641(e); *Lucien v. Fed. Nat. Mortg. Ass'n*, 21 F. Supp. 3d 1379, 1388 (S.D. Fla. 2014).

111.    TILA, requires that the creditor, assignee, or servicer provide a periodic statement to the borrower setting forth certain disclosures like, *inter alia*: the amount due, explanation of amount due, past payment breakdown, etc. 15 U.S.C. § 1638 *et seq.,* 12 CFR § 1026.41 *et seq.*

103.    TILA requires the creditor, assignee, or servicer to make the disclosures in a clear and conspicuous manner and the information "shall reflect the terms of the legal obligation between the parties." 12 CFR §§ 1026.31(b), (d)(1); 12 CFR § 1026.41(c).

112.    Ditech sent periodic statements to Plaintiff and the class with information that contained illegal property inspection charges disguised as generic "Corp Adv Disb" fees; that did not accurately reflect the terms of the legal obligation between the parties; and that was inaccurate, unclear, and inconspicuous concerning the amounts due and owing under the Mortgage.

113.    Ditech failed to comply with TILA when it sent periodic statements that contained information that was inaccurate, unclear, and inconspicuous, and that did not accurately reflect the terms of the legal obligation between the parties.

17

114.     Ditech has a pattern and practice of using form periodic statements that contain inaccurate, unclear, and inconspicuous information.

115.     Ditech's failure to comply with TILA harmed Plaintiff and the class by depriving them of the statutory right to accurate, clear, and conspicuous information concerning their mortgage loans.

116.     As a result of Ditech's failure to comply with TILA, Fannie Mae is liable to the Plaintiff and class members for actual damages, plus statutory damages, together with reasonable attorney's fees and costs. 15 U.S.C. § 1640(a).

**COUNT II AS TO DITECH'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**
**(Florida Class 2)**

117.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

118.     Ditech is a "person" as defined under the FCCPA.

119.     Ditech attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it attempted to collect and collected property inspection fees not owed. *Id.* § 559.72(9).

120.     Ditech knew it could not charge these property inspection fees because Fannie Mae's Guidelines specifically prohibit them from being charged more frequently than twenty days.

121.     Ditech was also put on notice about charging fees not owed by agreeing to the Consent Order.

122.     By charging illegal fees, and failing to provide information in an accurate, clear and conspicuous manner, Ditech attempted to collect an amount from Plaintiff and the class that they

18

didn't owe, and threatened to enforce the existence of a legal right (charging the fees) that didn't exist.

123.    As a result of Ditech's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT III AS TO DITECH'S VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT § 1692e**
**(Florida Class 3)**

124.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

125.    Ditech is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

126.    Ditech engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when its sent periodic statements to Plaintiff and the class demanding payment of debts not owed.

127.    Ditech violated 15 U.S.C. § 1692e when it used deceptive and misleading to collect debts contained in periodic statements sent to Plaintiff and the class and when it threatened to take an action (charging illegitimate property inspections) that could not be legally taken.

128.    Ditech also used the deceptive and misleading "Corp Adv Disb" description to disguise the property inspection fees so borrowers would not dispute the fees legitimacy.

129.    Ditech's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning amounts due and owing under his mortgage loan.

130.     As a result of Ditech's violation of 15 U.S.C. § 1692e, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

## COUNT IV AS TO DITECH'S VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT § 1692f
### (Florida Class 3)

131.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

132.     Ditech is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

133.     Ditech engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when its sent periodic statements to Plaintiff and the class demanding payment of debts not owed.

134.     Ditech violated 15 U.S.C. § 1692f when it used unfair and unconscionable means to collect debts contained in periodic statements sent to Plaintiff and the class and when it charged and threatened to charge late fees not expressly authorized by agreement.

135.     Ditech also used the deceptive and misleading "Corp Adv Disb" description to disguise the property inspection fees so borrowers would not dispute the fees legitimacy.

136.     Ditech's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning amounts due and owing under his mortgage loan.

137.    As a result of Ditech's violation of 15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

### COUNT V AS TO DITECH'S VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT § 1692f
### (Florida Class 4)

138.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he is a natural person allegedly obligated to pay a debt in connection with the purchase of a home.

139.    Ditech is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

140.    The letter Ditech sent to Plaintiff is a "communication" as defined under 15 U.S.C. § 1692a(2).

141.    Ditech attempted to collect a consumer debt as defined by 15 U.S.C. § 1692a(5) because Plaintiff was allegedly obligated to pay a debt in connection with the purchase of a home for personal, family, or household purposes.

142.    The February 2, 2018 letter Ditech sent to Plaintiff violated the FDCPA because it excluded the statutorily required disclosures.  The letter failed to state that any dispute of the debt must be in writing, a disclosure required by 15 U.S.C. § 1692g.

143.    As a result of Ditech's FDCPA violation, Plaintiff suffered substantial damage, including but not limited to the deprivation of his statutory right to dispute the debt, the deprivation of the right to basic information needed to assess the legitimacy of the debt, and deprivation of the statutory right to information needed to dispute the accuracy of the debt.

21

**JURY DEMAND**

144.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

**RELIEF REQUESTED**

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Ditech for all of the following:

a.    That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiff and all class members be awarded statutory damages for each of Plaintiff's claims;

c.    That Plaintiff and all class members be awarded costs and attorney's fees;

d.    That the Court enter a judgment permanently enjoining Ditech from charging and/or collecting debt in violation of the FCCPA;

e.    That the Court enter a judgment permanently enjoining Ditech from charging and/or collecting debt in violation of the FDCPA;

f.    That the Court enter a judgment permanently enjoining Ditech and Fannie Mae from providing borrowers inaccurate, unclear, and inconspicuous information in violation of TILA;

g.    That, should the Court permit the continued charging and/or collecting debt, it enter a judgment requiring the adoption of measures ensuring FDCPA, TILA, and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that compliance with those measures;

h.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure compliance with the FDCPA, TILA, and the FCCPA;

i.      That the Court enter an order that Ditech and Fannie Mae and its agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

j.      That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and

k.      Such other and further relief as the Court may deem just and proper.

Dated: May 8, 2018                                    Respectfully Submitted,


                                                      /s/ James L. Kauffman

                                                      James L. Kauffman (Fla. Bar. No. 12915)
                                                      1054 31st Street, Suite 230
                                                      Washington, DC 20007
                                                      Telephone:  (202) 463-2101
                                                      Facsimile:  (202) 342-2103
                                                      Email: jkauffman@baileyglasser.com

                                                      Darren R. Newhart, Esq.
                                                      Florida Bar No.: 0115546
                                                      E-mail: darren@cloorg.com
                                                      J. Dennis Card Jr., Esq
                                                      Florida Bar No.: 0487473
                                                      E-mail:DCard@Consumerlaworg.com
                                                      Consumer Law Organization, P.A.
                                                      721 US Highway 1, Suite 201
                                                      North Palm Beach, Florida 33408
                                                      Telephone: (561) 692-6013
                                                      Facsimile: (305) 574-0132


                                                      *Counsel for Plaintiff and the Putative Class*