**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CHARLES S. RODRIGUEZ, on behalf
of himself and all others similarly situated,

     Plaintiff,

     v.                       Case No. 6:18-cv-00721-CEM-TBS

DITECH FINANCIAL, LLC and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

     Defendants.

_____/

### PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Charles S. Rodriguez ("Plaintiff"), on behalf of himself and all others similarly situated, alleges violations of the Florida Consumer Collection Practices Act § 559.55 *et seq*. ("FCCPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq*. ("FDCPA"), against Ditech Financial, LLC ("Ditech") and violation of the FCCPA against Federal National Mortgage Association ("FNMA").

1.      In the last (10) years, over 960,000 homes in Florida alone were foreclosed on. *See* Ex. A, United States Residential Foreclosure Crisis: Ten Years Later, CoreLogic (March 2017). Although the foreclosure rates are lower now than at their peaks in 2010-2011, there are still a significant percentage of homeowners more than 90 days behind on their mortgage payments. *Id.* A foreclosure affects not only the homeowner, but also the homeowner's neighbors because just one foreclosure can cause a 2-3% decline in value of homes within a 1/8th mile vicinity.

1

http://www.flagpinrealty.com/Articles/Sheltering%20Neighborhoods%20from%20the%20Subprime%20Foreclosure%20Storm.pdf.

2.      Congress enacted the FDCPA and the Florida Legislature enacted the FCCPA to give defaulted borrowers a private right of action to ensure mortgage servicers give them accurate and clear information about their mortgage. With a clear statement of the amount of debt owed being most important. Ditech, on the other hand, gives borrowers opaque disclosures that cause confusion and frustrates the borrower's ability to stop a foreclosure.

3.      Indeed, Ditech is incentivized to keep borrowers in foreclosure because, while the amount charged is relatively small, the profit generating mark-up on the fees and repetitive nature in which the disguised fees are charged results in Ditech reaping thousands of dollars in profit from borrowers unlikely to challenge the fees when fighting to save their home.

4.      In this case, Ditech generically labeled drive-by property inspections as "Corp Adv Disb" fees on the Plaintiff's monthly billing statement. Resulting in Ditech charging Plaintiff for drive-by property inspections at an inappropriate and unreasonable frequency.

5.      By the conduct described above, Ditech knowingly violated the FCCPA and FDCPA. Fannie Mae is also liable for Ditech's violation of the FCCPA, which has caused Plaintiff and putative class members actual concrete and particularized injuries.

**JURISDICTION AND VENUE**

6.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.

7.    The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the FDCPA federal claim involves the same debt collection practices that form the basis of the FCCPA claims.

8.    The Court has personal jurisdiction because Defendants conduct business throughout the United States, including Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

9.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district where they are subject to personal jurisdiction at the time the action is commenced and because their contacts with this District are sufficient to subject them to personal jurisdiction.

**PARTIES**

10.   Plaintiff Charles Rodriguez is a natural person who resides in Florida.

11.   Defendant Ditech is a Minnesota corporation with its headquarters in St. Paul, Minnesota. Defendant services mortgages throughout the United States and Florida.

12.   Defendant Fannie Mae is Delaware corporation with its principal place of business at 3900 Wisconsin Ave, N.W., Washington D.C. 20016.

## APPLICABLE LAW

**FDCPA**

13.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

14.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

15.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

16.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

17.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

18.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

19.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

20.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

21.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See* generally Fla. Stat. § 559.72.

22.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

23.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

24.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

25.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id*. § 559.55(8).

26.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

27.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property,

insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id*. § 559.55(6).

## FACTUAL ALLEGATIONS

28.     On or about January 8, 2009, Plaintiff purchased a home in Orange County, Florida through a loan from Amtrust Bank, secured by a mortgage on the property. Copies of Plaintiff's Mortgage Note and Mortgage Agreement (collectively "Mortgage") are attached as Exhibit "B" and Exhibit "C" respectively.

29.     Plaintiff has continually lived in and maintained the home since he purchased it.

30.     On or about October 1, 2010, the Mortgage fell into default.

31.     On or about May 4, 2012, Mortgage Electronic Registration Systems, Inc., as Nominee for Amtrust Bank, its successors and/or Assigns, assigned the Note and Mortgage to FNMA.

32.     Several years later, on or about May 1, 2014, Everhome Mortgage transferred its servicing rights to Ditech, formally known as Green Tree Servicing, LLC, while the Note and Mortgage were in default.[1] Therefore, Ditech became the servicer of Plaintiff's Mortgage while it was already in default.

33.     FNMA contracted with Ditech to service Plaintiff and the class members' mortgage loans.

---

[1] On or about May 18, 2012, Elizabeth Wellborn, P.A., on behalf of FNMA, filed a complaint in the Ninth Judicial Circuit in and for Orange County, Florida to initiate foreclosure of the Plaintiff's home. Plaintiff hired Smothers Law Firm, P.A. to defend him in the foreclosure.

34.     Ditech accepted the authority and duties given by FNMA to service Plaintiff and the class members' mortgage loans.

35.     FNMA controls Ditech's conduct while servicing the Plaintiff and class members' mortgage loans.[2]

36.     Ditech services the Plaintiff and class members' mortgage loans on behalf of FNMA as its agent.

37.     As Fannie Mae's agent, Ditech must follow the Fannie Mae Single Family Servicing Guide ("Guidelines").

38.     The Guidelines only allow a servicer, like Ditech, to charge property inspections not more frequently than every twenty days. *See* Fannie Mae Single Family Servicing Guide D2-2-10.

39.     Under the Guidelines, Ditech must "be aware of, and in full compliance with, all federal, state, and local laws (e.g., statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions)." And "[a]s applicable law can change quickly, and sometimes without widespread notice, the seller/servicer must establish appropriate facilities for monitoring applicable legal developments and implementing appropriate measures to stay in compliance with applicable law. ..." (emphasis added). *See* 2015 Fannie Mae Single Family Servicing Guide at 98, *available at* https://www.fanniemae.com/content/guide/svc040815.pdf.

---

[2] *See generally* Fannie Mae Single Family Servicing Guide, Part A: Doing Business with Fannie Mae. https://www.fanniemae.com/content/guide/svc061318.pdf (last visited July 26, 2018)

40.     The Guidelines only allow Ditech to charge property inspections if: Quality Right Party Contact has not been achieved; a full payment has not been received within the last 30 days; or the borrower is not performing under the applicable bankruptcy plan. *Id* at 421-422 (section D2-2-10).

41.     Ditech must also comply with the terms and conditions in the borrower's mortgage.

42.     After default, the standard mortgage only allows "*reasonable* entries and inspections of the property…." and it only allows Ditech to "do and pay for whatever is *reasonable* to protect" FNMA's interest in the property. (*See* Ex. B ¶¶ 7, 9).

43.     Ditech ignores these limitations and orders property inspections on a defaulted borrower's home that it knows are unreasonable, unnecessary, and do nothing to protect FNMA's interest.

44.     Ditech charges borrowers $15 per property inspection, but Ditech pays much less than what it charges, keeping the overcharge as profit.

45.     Ditech orders the property inspections not for the benefit of FNMA or the borrower, but solely for its own financial gain.

46.     Ditech then disguises the property inspection fees as "Corp Adv Disb" charges on the Plaintiff and the class members' monthly billing statements.

47.     Ditech disguises the fees so it can charge them at a greater frequency than allowed because of the profit earned.

48.     Instead of identifying the charges as property inspection fees, Ditech chooses to deceptively label them as "Corp Adv Disb" fees, which is unclear, inconspicuous, false, and misleading practice.

49.     On September 16, 2016, Ditech sent a billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "D".

50.     Under the heading "Transaction Activity Since Last Statement", Ditech charged Plaintiff a $15.00 "Corp Adv Disb" on September 14, 2016. *Id.*

51.     Ditech provided no description on what default-related service the $15.00 charge represented.

52.     Upon information and belief, the $15.00 "Corp Adv Disb" is actually a "drive-by" property inspection charge.

53.     Ditech demanded Plaintiff pay a total amount of $100,102.14, which included the $15.00 "Corp Adv Disb" charge. *Id.*

54.     Directly adjacent, the billing statement advised:

**\*\*Delinquency Notice\*\***

**You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of September 16 you are 2177 days delinquent on your mortgage loan. Your account first became delinquent on 1010112010.**

*See* Ex. D.

55.     Ditech included a payment coupon for Plaintiff to detach and send with his payment. *Id.*

56.     On the payment coupon, Ditech again demanded a total amount of $100,102.14 and advised that it would charge a late fee if Plaintiff didn't pay. *Id.*

57.     Ditech knew the property inspection wasn't reasonable or necessary because Plaintiff continually lived in and maintained the home.

58.     Ditech also knew that Plaintiff lived in and maintained the home because it has been in continual communication with Plaintiff and his attorney, Smothers.

59.     Further, Ditech charged $15 for the property inspection, and demanded Plaintiff pay that amount, but upon information and belief, Ditech's cost for the inspection is less than what it charged Plaintiff, approximately $10 per property inspection.

60.     Ditech pockets the difference between the $15 for the property inspection fee charged to Plaintiff and Ditech's actual cost of the inspection.

61.     On October 17, 2016, Ditech sent a billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "E".

62.     The October statement reflects that Ditech charged Plaintiff another $15.00 "Corp Adv Disb" fee on September 30, 2016. Ditech again added that fee to the total amount due. *Id*.

63.     Therefore, Ditech charged Plaintiff for two property inspections within 14 days of each other, one on September 16, 2016 (Ex. D) and another on September 30, 2016 (Ex. E).

64.     On or about April 17, 2017, Ditech sent a billing statement to Smothers Law Firm P.A. on behalf of Plaintiff. The Billing Statement is attached as Exhibit "F".

65.     Under the heading "Transaction Activity Since Last Statement", Ditech charged Plaintiff a $15.00 "Corp Adv Disb" fee on March 31, 2017. *Id*.

66.     Ditech demanded Plaintiff pay a total amount of $81,344.17, which included the $15.00 "Corp Adv Disb" fee. *Id.*

67.     On or about July 17, 2017, Ditech sent another billing statement to Smothers Law Firm, P.A. on behalf of Plaintiff. The billing statement is attached as Exhibit "G."

68.     Ditech also charged the Plaintiff a separate $200 "Corp Adv Disb" charge with no explanation on what the charge relates to. (*Id.*).

69.     Ditech's non-descript labeling is misleading and unfair because it doesn't give the borrower accurate or correct information about what service the fee is related to or whether it was performed.

70.     By charging the unlawful property inspections fees and disguising them on monthly billing statements that demand payment from Plaintiff, Ditech acted as a debt collector by attempting to collect amounts on behalf of its principal, Fannie Mae.

71.     Ditech acted jointly and in concert with FNMA in attempt to collect unlawful debts from Plaintiff and the class members.

72.     Ditech demanded Plaintiff pay these fees despite operating under FNMA's strict servicing guidelines.

73.     Despite the specific prohibitions in the Guidelines and mortgage, Ditech ordered property inspections of the Plaintiff's home knowing the inspections were unreasonable and unnecessary for the purpose of unlawful financial gain.

74.     Ditech then knowingly demanded Plaintiff pay an amount to cure a default that included the illegitimate, disguised property inspection charges.

75.     Ditech's demands were a direct breach of each of the following contractual provisions permitting *only* recovery of amounts actually incurred: (1) Paragraph 9 of the Mortgage Agreement permitted Ditech to recover "***amounts disbursed***" in protecting Fannie Mae's interest and rights in the Mortgage Agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement prohibited Ditech from charging estimated fees, stating ***"[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"*** (emphasis added); (3) Paragraph 22 of Fannie Mae's Mortgage Agreement permitted Ditech to collect "***expenses incurred in pursuing***" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of the Mortgage Note permitted Ditech, on behalf of Fannie Mae, the "***right to be paid back*** . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees" (emphasis added).

76.     The Mortgage prohibits Ditech from creating a profit center by marking-up the cost of the property inspection fees because Ditech hasn't "incurred" the marked-up amount nor has it "disbursed" that amount in connection with the default.

77.     Ditech demanded Plaintiff and the class members pay these illegitimate fees despite also operating under a Consent Order with the Consumer Financial Protection Bureau. The Consent Order is attached as Exhibit "H."

78.     The Order prohibits Ditech, Ditech's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual

notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

> Making any material misrepresentation or assisting others in making any material misrepresentation, expressly or by implication, including but not limited to misrepresentations …[t]hat consumers' loans have certain unpaid balances, payment due dates, interest rates, monthly payment amounts, delinquency statuses, and unpaid fees or other amounts due;

(*Id*. at 39-40).

79.     And further, the Order prohibits Ditech, Ditech's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with collecting on past-due debt, are permanently restrained and enjoined from:

> Using any false, deceptive, or misleading representation or means, including but not limited to falsely representing, directly or indirectly, expressly or by implication: (1) the character, amount, or legal status of any debt… [and] [u]sing any unfair or unconscionable means to collect or attempt to collect any debt, including but not limited to collecting any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.…

(*Id*. at 46-47).

80.     Ditech's President, Thomas J. Franco, signed the Order.

81.     Despite the Order's specific prohibitions, Ditech knowingly, and deceptively, demanded Plaintiff pay illegitimate amounts not due and owing.

82.     Additionally, the CFPB has received hundreds of complaints about Ditech's improper loan servicing practices, many involving similar complaints on requests for debt not   actually   owed.   https://www.consumerfinance.gov/data-research/consumer-

complaints/search/?company=Ditech%20Financial%20LLC&from=0&has_narrative=true&searchField=all&searchText=&size=25&sort=created_date_desc

83.     Ditech's knowledge can be imputed to FNMA through agency theory. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2, 2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and holder through principles of agency).

84.     Ditech and FNMA have a pattern and practice of demanding illegal fees, and disguising those fees, because Plaintiff received a form letter from Ditech that has routinely generated line-items that included unlawful amounts.

85.     Ditech's letters are form letters as shown by the identification code: "W FL DEMAND." *Id.*

86.     On or about December 5, 2017, Plaintiff, through counsel, sent a cure letter to Ditech and Fannie Mae, attaching a draft of a class action complaint with the same allegations contained herein. See the letter attached as Exhibit "I."

87.     After a reasonable amount of time, the Plaintiff filed this lawsuit because Ditech and FNMA didn't cure the breach of its violations of state and federal law.

88.     After Plaintiff made a demand and Defendants' failed to cure, Ditech sent *another* dunning letter to Plaintiff dated February 15, 2018. *See* Exhibit "J."

89.     The February 15, 2018 letter stated:

> If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-643-0202. Or call us via TDD at 1-800-643-0202 #711.

*Id.* at 2-3.

90.     The letter further advised:

**Ditech Financial LLC is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor**.

*Id.* at 3 (emphasis in original).

91.     Ditech acted as a debt collector by attempting to collect amounts on behalf of its principal, FNMA.

### ADDITIONAL FACTUAL ALLEGATIONS REGARDING PLAINTIFF'S INJURY CAUSED BY DEFENDANTS' FDCPA AND FCCPA VIOLATIONS

92.     Plaintiff has a statutory right to receive accurate and timely information from Ditech and FNMA on his monthly billing statements. Plaintiff also has a statutory right to receive a clear and conspicuous disclosures from Ditech and FNMA about the fees and costs he is required to pay on his mortgage loan.

93.     By failing to respond with accurate information about the amounts owed under the mortgage loan, and demanding payment of unlawful amounts, Ditech and FNMA deprived Plaintiff of his statutory rights under the FDCPA and FCCPA.

### CLASS ACTION ALLEGATIONS

#### Florida Class 1

94.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's

15

FCCPA and FDCPA violations and Fannie Mae's FCCPA violations (the "Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech charged, collected, or attempted to collect a fee for a property inspection performed more frequently than twenty days apart during the applicable statute of limitations.

### Florida Class 2

95.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's FCCPA and FDCPA violations and Fannie Mae's FCCPA violations (the "Florida Class 2"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech charged, collected, or attempted to collect a fee for a property inspection performed more frequently 45 days apart after Ditech had already achieved Quality Right Party Contact during the applicable statute of limitations.

### Florida Class 3

96.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Ditech's FDCPA and FCCPA violations and Fannie Mae's FCCPA violations (the "Florida Class 3"), subject to modification after discovery and case development:

> All Florida residents to whom Ditech sent a periodic statement that charged, collected, or attempted to collect a $15.00 "Corp Adv Disb" fee during the applicable statute of limitations.

97.     Class members are identifiable through Defendants' records and payment databases.

98.     Excluded from the Class are Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

99.     Plaintiff proposes that he serve as class representative for the Classes.

100.    Defendants' actions have harmed Plaintiff and the class members.

101.    Numerosity is satisfied. There are likely thousands of class members. Individual joinder of these persons is impracticable.

102.    There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

    a.   Whether Ditech violated the FCCPA by charging monies not due;

    b.   Whether Ditech violated the FDCPA by charging monies not due;

    c.   Whether FNMA is vicariously liable for Ditech's violations of the FCCPA;

    d.   Whether FNMA is vicariously liable for Ditech's violations of the FCCPA;

    e.   Whether Plaintiff and class members are entitled to actual or statutory damages as a result of Defendants' actions;

    f.   Whether Plaintiff and class members are entitled to attorney's fees and costs; and

    g.   Whether Defendants should be enjoined from engaging in such conduct in the future.

102.    Plaintiff's claims are typical of the claims of the Classes.

103.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the

interests of the Classes, and he is represented by counsel skilled and experienced in class actions.

104.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

105.    The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications concerning individual class members.

**COUNT I AS TO DITECH'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**
**(Florida Classes 1, 2, 3)**

106.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

107.    Ditech is a "person" as defined under the FCCPA.

108.    Ditech attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it attempted to collect and collected property inspection fees not owed. *Id.* § 559.72(9).

109.    Ditech knew it could not charge these property inspection fees because FNMA's Guidelines specifically prohibit them from being charged more frequently than twenty days.

110.    Ditech knew that obscuring the property inspections as "Corp Adv Disb" fees on monthly billing statements was misleading and was done to hide the true nature of the property inspection fees.

111.    Ditech knew it could not charge these property inspection fees more closely than every forty-five days because Ditech achieved Quality Right Party Contact ("QRPC") with Plaintiff through his continual occupancy of the residence and Ditech's continual contact with Plaintiff during his delinquency. FNMA's Guidelines specifically only allow repetitive inspections ever thirty days if QRPC has not been achieved.

112.    Ditech was also put on notice about charging fees not owed by agreeing to the Consent Order.

113.    Based on the above, Ditech ordered property inspections that it knew were unreasonable and unnecessary because they did nothing to protect FNMA's interest in Plaintiff and the class members' homes.

114.    Ditech ordered the property inspections for the purpose of receiving unlawful financial gain as the amount it pays for each property inspection is much less than what it charges and collects from borrowers.

115.    By charging illegal fees, and failing to provide information in an accurate, clear and conspicuous manner, Ditech attempted to collect an amount from Plaintiff and the class that they didn't owe and asserted a non-existent legal right (charging the fees) to collect the fees.

116.    As a result of Ditech's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT II AS TO FANNIE MAE'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**
**(Florida Classes 1, 2, 3)**

117.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when he purchased his home by mortgage.

118.    FNMA is a "person" as defined under the FCCPA.

119.    FNMA employed Ditech as its agent for the servicing of Plaintiff's loan.

120.    FNMA engaged in indirect debt collection when Ditech, on FNMA's behalf, sent monthly billing statements to Plaintiff and the class members that demanded payment of amounts not owed. Fla. Stat. § 559.55(2) ("Communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.)

121.    FNMA, through its agent Ditech, attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it attempted to collect and collected property inspection fees not owed. *Id.* § 559.72(9).

122.    FNMA knew that the obscuring of the property inspections as "Corp Adv Disb" was misleading and was done to hide the true nature of the property inspection fees.

123.    FNMA knew it could not charge these property inspection fees because its own Servicing Guidelines specifically prohibit property inspections from being charged more frequently than twenty days.

124.    FNMA knew it could not charge these property inspection fees more closely than every forty-five days because Ditech achieved Quality Right Party Contact ("QRPC")

with Plaintiff through his continual occupancy of the residence and Ditech's continual contact with Plaintiff during his delinquency. FNMA's Guidelines only allow repetitive inspections ever thirty days if QRPC has not been achieved.

125.    Ditech knew it could not charge these property inspection fees because FNMA's Guidelines specifically prohibit them from being charged more frequently than twenty days.

126.    Ditech knew that the obscuring of the property inspections as "Corp Adv Disb" was misleading and was done to hide the true nature of the property inspection fees.

127.    Ditech knew it could not charge these property inspection fees more closely than every forty-five days because Ditech achieved Quality Right Party Contact ("QRPC") with Plaintiff through his continual occupancy of the residence and Ditech's continual contact with Plaintiff during his delinquency.  Fannie Mae's Guidelines specifically only allow repetitive inspections ever thirty days if QRPC has not been achieved.

128.    Ditech was also put on notice about charging fees not owed by agreeing to the Consent Order.

129.    Ditech's knowledge can be imputed to its principal, FNMA.

130.    By charging illegal fees, and failing to provide information in an accurate, clear and conspicuous manner, FNMA, through Ditech, attempted to collect an amount from Plaintiff and the class that they didn't owe, and threatened to enforce the existence of a legal right (charging the fees) that didn't exist.

131.     As a result of FNMA's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

### COUNT III AS TO DITECH'S VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT § 1692e
### (Florida Classes 1, 2, 3)

132.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

133.     Ditech is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

134.     Ditech engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when its sent monthly billing statements to Plaintiff and the class demanding payment of debts not owed.

135.     Ditech violated 15 U.S.C. § 1692e when it used deceptive and misleading descriptions to collect debts contained in monthly billing statements sent to Plaintiff and the class and when it threatened to take an action (charging illegitimate property inspections) that could not be legally taken.

136.     Ditech also used the deceptive and misleading "Corp Adv Disb" description to disguise the property inspection fees so borrowers would not dispute the fees legitimacy.

137.    Ditech's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning amounts due and owing under his mortgage loan.

138.    As a result of Ditech's violation of 15 U.S.C. § 1692e, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

### COUNT IV AS TO DITECH'S VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT § 1692f (Florida Classes 1, 2, 3)

139.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when he purchased a home in Florida by mortgage.

140.    Ditech is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

141.    Ditech engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when its sent periodic statements to Plaintiff and the class demanding payment of debts not owed.

142.    Ditech violated 15 U.S.C. § 1692f when it used unfair and unconscionable means to collect debts contained in periodic statements sent to Plaintiff and the class and when it charged and threatened to charge late fees not expressly authorized by agreement.

143.    Ditech also used the deceptive and misleading "Corp Adv Disb" description to disguise the property inspection fees so borrowers would not dispute the fees legitimacy.

144.    Ditech's violation of the FDCPA harmed Plaintiff by depriving him of the statutory right to accurate, clear, and conspicuous information concerning amounts due and owing under his mortgage loan.

145.    As a result of Ditech's violation of 15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**JURY DEMAND**

146.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

**RELIEF REQUESTED**

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Ditech for all of the following:

a.    That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiff and all class members be awarded statutory damages for each of Plaintiff's claims;

c.    That Plaintiff and all class members be awarded costs and attorney's fees;

d.    That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FCCPA;

e.    That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA;

f.    That, should the Court permit the continued charging and/or collecting debt, it enter a judgment requiring the adoption of measures ensuring FDCPA and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that compliance with those measures;

g.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure compliance with the FDCPA and the FCCPA;

h.    That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

i.    That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and

j.    Such other and further relief as the Court may deem just and proper.

Dated: July 27, 2018                              Respectfully Submitted,


                                                  /s/ *James L. Kauffman*

                                                  James L. Kauffman (Fla. Bar. No. 12915)
                                                  1054 31st Street, Suite 230
                                                  Washington, DC 20007
                                                  Telephone:  (202) 463-2101
                                                  Facsimile:  (202) 342-2103
                                                  Email: jkauffman@baileyglasser.com

                                                  Darren R. Newhart, Esq.
                                                  Florida Bar No.: 0115546

E-mail: darren@cloorg.com
J. Dennis Card Jr., Esq
Florida Bar No.: 0487473
Consumer Law Organization, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132

*Counsel for Plaintiff and the Putative Class*