## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA – ORLANDO DIVISION

CHARLES S. RODRIGUEZ, on behalf of
himself and all others similarly situated,

        Plaintiff,

    v.                                Case No. 6:18-cv-00721-CEM-TBS

DITECH FINANCIAL LLC and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

Defendants Ditech Financial LLC ("Ditech") and Federal National Mortgage Association ("Fannie Mae") respectfully submit this Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.        INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") asserts claims against Ditech and Fannie Mae under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA") related to Ditech's assessment of property inspection fees on Plaintiff's defaulted loan.  Plaintiff contends that Ditech, allegedly in violation of the FDCPA and FCCPA, charged property inspection fees more frequently than provided for in the Fannie Mae Single Family Servicing Guide ("Fannie Mae Servicing Guide") and "disguised" those fees with the term "Corp Adv Disb" on

Plaintiff's account statements to avoid a dispute regarding their legitimacy.

Plaintiff's amendments to his initial complaint fail to resuscitate his claims against either Defendant.  As a threshold matter, Plaintiff failed to allege sufficient facts relating to alleged satisfaction of the mortgage's "notice and cure" provision, which is a condition precedent to his bringing suit.  With respect to Plaintiff's claims against Ditech, they are fatally flawed because the charging and collection of property inspection fees was expressly authorized in Plaintiff's mortgage.  In addition, any alleged failure to comply with "guidance" contained in the Fannie Mae Servicing Guide—a document to which Plaintiff is not a party—cannot form a basis for liability.  Plaintiff's latest attempt to bring a claim against Fannie Mae—here, under the FCCPA—also fails because the claims against Ditech fail, Ditech is not Fannie Mae's agent, and the FAC is devoid of any allegations to support a plausible claim that Fannie Mae is vicariously liable for Ditech's alleged misconduct.

For these reasons, as explained more fully below, Plaintiff's FAC should be dismissed in its entirety with prejudice.

## II.   PLAINTIFF'S ALLEGATIONS[1]

### A.   Plaintiff's Mortgage and His Default.

On or about January 8, 2009, Plaintiff bought a home in Orange County, Florida with a loan from Amtrust Bank (the "Note").  FAC ¶ 28.  The Note was secured by a mortgage on the property (the "Mortgage").  *Id.*, Ex. B (Note), Ex. C (Mortgage).

---

[1]   Plaintiff's allegations are taken as true solely for purposes of this Rule 12(b)(6) motion.  *See Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1364 (M.D. Fla. 2014), *aff'd*, 626 F. App'x 935 (11th Cir. 2015).  Defendants, however, in no way admit to Plaintiff's allegations of wrongdoing.

The Mortgage provides, *inter alia*, that "Lender or its agent may make reasonable entries upon and inspections of the Property." *Id.* at Ex. C § 7. The Mortgage also provides that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." *Id.* § 14. With respect to disputes relating to the Mortgage, Section 20 of the Mortgage contains a notice-and-cure provision (the "Notice and Cure Provision"), stating:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach **and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action**.

*Id.* § 20 (emphasis added). The complaining party's compliance with the Notice and Cure Provision, and the other party's noncompliance therewith, is a condition precedent to bringing suit. *Id.*

On or about October 1, 2010, Plaintiff defaulted on his Mortgage. FAC ¶ 30. On or about May 4, 2012, Mortgage Electronic Registration Systems, Inc., as nominee for Amtrust Bank, assigned the Note and Mortgage to Fannie Mae. *Id.* ¶ 31. On or about May 1, 2014, Everhome Mortgage transferred its servicing rights under the Mortgage to Ditech. *Id.* ¶ 32. Plaintiff alleges that Ditech "must follow the Fannie Mae Single Family Servicing Guide," *id.* ¶ 37, which Plaintiff claims limits, depending on the

circumstances, to either once every 20 days, 30 days, or 45 days the frequency with which a servicer may assess property inspection fees, *id.* ¶¶ 38, 111, 123, 124, 127.

> **B.    Ditech's Account Statements Regarding Plaintiff's Defaulted Mortgage Loan.**

On September 16, 2016, Ditech sent an account statement to Plaintiff's foreclosure counsel ("Foreclosure Counsel") relating to Plaintiff's defaulted Note and Mortgage. *Id.* ¶ 49, Ex. D.  The statement reflected a $15 charge dated September 14, 2016 and labeled "Corp Adv Disb," which allegedly was added to Plaintiff's balance due. *Id.* ¶¶ 49-50, 53.  Plaintiff alleges, "upon information and belief," that the "Corp Adv Disb" fee was a "drive-by" property inspection charge. *Id.* ¶ 52.

On October 17, 2016, April 17, 2017, and July 17, 2017, Ditech sent additional account statements to Plaintiff's Foreclosure Counsel.  *Id.* ¶¶ 61, 64, 67, Exs. E, F, G. Each statement reflected a $15 charge dated September 30, 2016, March 31, 2017, and June 30, 2017, respectively, and labeled "Corp Adv Disb," which allegedly was added to Plaintiff's balance due.  *Id.* ¶¶ 62, 65-66, 67-68.

Plaintiff alleges, "upon information and belief," that Ditech "pays much less" than $15 for each property inspection fee, which (assuming the fee is paid) results in a profit to Ditech.  *Id.* ¶¶ 59-60.  Plaintiff alleges that through its account statements, Ditech ostensibly was "attempting to collect amounts on behalf of its principal, Fannie Mae" but instead was deceptively overcharging Plaintiff for property inspection fees in a manner at odds with the Fannie Mae Servicing Guide and Plaintiff's Mortgage to make a profit.  *Id.* ¶¶ 44, 47, 70, 73.

On December 5, 2017, Plaintiff, through his Foreclosure Counsel, sent a "cure letter" to Ditech and Fannie Mae. *Id.* ¶ 86, Ex. I.  Plaintiff's Foreclosure Counsel did not copy Ditech and Fannie Mae's foreclosure counsel on the correspondence. *See id.*  The five line "cure letter" enclosed a 141-paragraph, five-count draft federal court complaint against Defendants. *Id.*  Plaintiff summarily alleges that after "a reasonable amount of time," Plaintiff filed this lawsuit because Defendants "didn't cure the breach of its violations of state and federal law." *Id.* ¶ 87.

### C.    Plaintiff's Purported Claims.

Plaintiff alleges that Ditech violated the FCCPA (Count I) and FDCPA (Counts III and IV) by charging property inspection fees more frequently than permitted under the Fannie Mae Servicing Guide, and that "disguising" the fees with the term "Corp Adv Disb" in Plaintiff's account statements was "deceptive and misleading" and "unfair and unconscionable" because it prevented Plaintiff from challenging the validity of the fees.[2] *Id.* ¶¶ 108-110, 135-137, 142-144.  As to Count II asserted against Fannie Mae, while Plaintiff asserts the legal conclusion that Ditech was Fannie Mae's "agent," Plaintiff alleges that Ditech's purported misconduct did "nothing to protect FNMA's interest," and was "not for the benefit of FNMA" and "solely for [Ditech's] own financial gain." *Id.* ¶¶ 36, 43, 45.  Nevertheless, Plaintiff states that Fannie Mae somehow is vicariously liable under the FCCPA for Ditech's alleged noncompliance with the Fannie Mae Servicing Guide (Count II). *Id.* ¶¶ 83, 102(c),(d), 122-124.

---

[2]    In paragraph 142, Plaintiff alleges that Count IV is based on "late fees not expressly authorized by agreement."  FAC ¶ 142.  However, Plaintiff's FAC does not allege that he was charged any late fees.

### III.    ARGUMENT

A motion to dismiss tests the legal sufficiency of a complaint.  To survive a motion to dismiss, Plaintiff must allege sufficient facts to establish a plausible basis for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *Iqbal*, 556 U.S. at 677-78, and must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests," *Beepot v. J.P. Morgan Chase Nat'l Corporate Servs.*, 57 F. Supp. 3d 1358, 1364-65 (M.D. Fla. 2014) (quoting *Twombly*, 550 U.S. at 555).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1365.  Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, dismissal for failure to state a claim is appropriate where the pleading fails to set forth factual allegations, "respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs.*, 637 F. Supp. 2d 1002, 1013 (M.D. Fla. 2007) (quoting *Twombly*, 550 U.S. at 555).  Additionally, with respect to pleading conditions precedent, "when denying that a condition precedent has occurred or been performed, a party must do so with particularity."  Fed. R. Civ. P. 9(c).

In this case, Plaintiff does not and cannot allege any set of facts to support a plausible basis for relief against Defendants.

A.     **Plaintiff Fails To Allege Facts Regarding Its Satisfaction Of, And Ditech's Alleged Noncompliance With, The Mortgage's Notice And Cure Provision.**

The Mortgage's Notice and Cure Provision precludes Plaintiff from filing a lawsuit "that arises from the other party's actions pursuant to [the Mortgage] or that alleges that the other party has breached any provision of, or any duty owed by reason of" the Mortgage unless: (1) Plaintiff notifies Ditech of the alleged misconduct; and (2) Ditech fails, after a reasonable period of time, to take corrective action.  FAC Ex. C § 20; *supra* at p. 3.  Both Plaintiff's alleged compliance with the Notice and Cure Provision, and Ditech's alleged noncompliance therewith, are conditions precedent to Plaintiff's right to sue Ditech for alleged misconduct in connection with the Mortgage.  *Id.*

Florida federal courts have held identical notice-and-cure provisions applicable to the same types of claims asserted in this case.  *See, e.g.*, *Sandoval v. Wolfe*, No. 16-cv-61856, 2017 WL 244111, at *3 (S.D. Fla. Jan. 19, 2017), *amended*, 2017 WL 3724584 (S.D. Fla. Mar. 10, 2017); *Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016); *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), *order clarified,* 2016 WL 3163075 (S.D. Fla. Mar. 18, 2016); *Hill v. Nationstar Mortgage LLC*, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015).[3]

---

[3]     The notice-and-cure provision is equally applicable to lenders and servicers of a mortgage loan.  *Erving v. Ocwen Loan Servicing, LLC,* 2017 U.S. Dist. LEXIS 12435, at *6-*7 (S.D. Fla. Jan. 27, 2017); *Charles*, 2016 WL 950968, at *2.

Rule 9(c) requires that, like here, where a party denies that a condition precedent has been performed "a party must do so with particularity."  Fed. R. Civ. P. 9(c). Plaintiff summarily alleges that "[a]fter a reasonable amount of time, . . . Ditech and FNMA didn't cure the breach of its [sic] violations of state and federal law."  FAC ¶ 87. Nowhere does Plaintiff plead that he satisfied the Mortgage's condition precedent to suit, and nowhere does Plaintiff plead facts with specificity or otherwise that Ditech failed to comply with the Notice and Cure Provision.  *See id.*  Because he fails to include any supporting factual allegations, Plaintiff's group-pled legal conclusion relating to Defendants' failure to cure is insufficient under *Twombly-Iqbal*, let alone under the more demanding requirements of Rule 9(c).  *See Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); Fed. R. Civ. P. 9(c); *Sandoval*, 2017 WL 244111, at *3 (dismissing claims for failure to plead compliance with identical notice-and-cure provision); *Charles*, 2016 WL 950968, at *2 (same); *Sotomayor*, 2016 WL 3163074, at *2 (same); *Hill*, 2015 WL 4478061, at *3 (same); *Burnett v. City of Jacksonville, FL*, 376 F. App'x 905, 906-07 (11th Cir. 2010) (affirming dismissal of plaintiff's claims for failure to plead facts that plaintiff fulfilled the conditions precedent to filing suit); *Joseph v. Bernstein*, 2014 WL 4101392, at *9 (S.D. Fla. Aug. 19, 2014) (discussing repeated dismissal of claims based on failure to allege compliance with conditions precedent), *aff'd*, 612 F. App'x 551 (11th Cir. 2015).[4]

---

[4]     While not necessary to resolve Defendants' motion in light of Plaintiff's failure to plead sufficient facts relating to alleged satisfaction of the Notice and Cure Provision, Plaintiff *cannot* plead facts to support his legal conclusion that there was no cure under the Mortgage.  Ditech responded to Plaintiff's December 5, 2017 letter and, although it disagreed with Plaintiff's claims, waived *all of the inspection fees assessed to Plaintiff's*

Therefore, Plaintiff's claims are barred altogether because he fails to allege sufficient facts regarding Defendants' noncompliance with the Mortgage's Notice and Cure Provision.

**B.      Plaintiff's FCCPA And FDCPA Claims Against Ditech (Counts I, III, And IV) Are Independently Flawed, As Well.**

Plaintiff's FCCPA and FDCPA claims against Ditech related to the timing and manner in which Ditech assessed property inspection fees (Counts I, III, and IV) fail because the fees were authorized by Plaintiff's Mortgage, and Ditech's alleged noncompliance with the Fannie Mae Servicing Guide cannot form a basis for liability. Accordingly, Counts I, III, and IV should be dismissed.

The Mortgage supplies Ditech the legal right to "make reasonable entries upon and inspections of the Property," and to charge, without any limitation in frequency or amount, fees "for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security

---

*account* in order to resolve the issue. *See* **Exhibit A** (filed contemporaneously with this Motion) at p. 3.

Nevertheless, nearly four months later, on May 10, 2018, Plaintiff proceeded to file the draft complaint attached to his letter, which summarily alleged that Defendants "didn't cure the breach of its [sic] violations of state and federal law." Compl. (Dkt. No. 1) ¶ 84. This allegation is contrary to Ditech's waiver of the inspection fees. And nowhere does Plaintiff plead that Ditech's cure—*i.e.*, waiving every one of its inspection fees—was somehow insufficient under the Mortgage. Plaintiff should not be permitted to circumvent the Mortgage's Notice and Cure Provision by crafty pleading. *See, e.g.*, *Hawthorn Corp. v. United States*, 98 F. Supp. 3d 1226, 1235 (M.D. Fla. 2015) (recognizing that a plaintiff cannot circumvent case-barring facts "simply through artful pleading of its claims") (citing *JBP Acquisitions, LP v. US*, 224 F.3d 1260, 1264 (11th Cir. 2000)).

Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."  FAC Ex. C §§ 7, 14.

These legally-enforceable contract rights take precedence over, and indeed are unaffected by, any alleged guidance on the frequency of property inspections supplied by the Fannie Mae Servicing Guide—a document to which Plaintiff is not a party and therefore which Plaintiff cannot seek to enforce against Ditech.  *See Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930, at *3 (C.D. Cal. May 28, 2015), *aff'd*, 676 F. App'x 647 (9th Cir. 2017).

In *Vega*, the plaintiffs alleged the same theory of liability as here:  that the Fannie Mae Servicing Guide precluded the defendant from collecting property inspection fees in the manner that it did.  *Vega*, 2015 WL 3441930, at *3; FAC ¶¶ 109, 111, 123-125, 127, 135, 142.  The court soundly rejected such a theory on the basis that "there is no authority anywhere" to support it.  *Vega*, 2015 WL 3441930, at *4.  Instead, inspection fee rights under the plaintiffs' mortgage controlled, and, in any event, the plaintiffs could not seek to enforce against a servicer the terms of the Fannie Mae Servicing Guide to which the plaintiffs were not a party.  *Id.* at *5.  The court found the plaintiffs' reliance on the Fannie Mae Servicing Guide "untenable."  *Id.* at *5.

Numerous courts across the country have similarly rejected the notion that noncompliance with the Fannie Mae Servicing Guide gives rise to a borrower's cause of action against a servicer.  *See, e.g.*, *Hinton v. Fed. Nat. Mortgage Ass'n,* 945 F. Supp. 1052, 1056-57 (S.D. Tex. 1996), *aff'd*, 137 F. 3d 1350 (5th Cir. 1998) (rejecting claim based on a "violation" of the Fannie Mae Servicing Guide); *McKenzie v. Wells Fargo*

*Bank, N.A.*, 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013) (same); *Pennell v. Wells Fargo*

*Bank, N.A.,* 2012 WL 2873882, at *8 (S.D. Miss. July 12, 2012), *aff'd*, 507 F. App'x 335

(5th Cir. 2013) (same); *Kariguddaiah v. Wells Fargo Bank, N.A.,* 2010 WL 2650492, at

*4 n. 4 (N.D. Cal. July 1, 2010) (same); *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d

385, 404-06 (S.D.N.Y. 2010) (same); *Wells Fargo Bank, N.A. v. Sinnott,* 2009 WL

3157380, at *11-12 (D. Vt. Sept. 25, 2009) (same regarding the Freddie Mac Guide).

Here, Plaintiff's Mortgage provided Ditech the legal right to inspect Plaintiff's

mortgaged property upon default, make any related inspections to preserve the value

thereof, and collect fees associated with such inspection from Plaintiff.  Plaintiff's

attempt to ground his claims on Ditech's purported noncompliance with the Fannie Mae

Servicing Guide, a document to which Plaintiff is not a party, has no support in the case

law (*see cases, supra*), and, in any event, is an improper attempt to transform a

misdirected breach of contract claim into a cause of action under the FDCPA and

FCCPA, *c.f. Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 802 (11th Cir. 2016)

(dismissing FDCPA claim where alleged conduct "might arguably constitute some kind

of breach of a contract … [but] does not constitute an FDCPA violation").

Counts I, III, and IV fail to state any claim against Ditech and should be

dismissed.[5]

---

[5]      Plaintiff's assertion, grounded solely on his counsel's "information and belief,"
that Ditech pays less than $15 for each property inspection fee, which results in a profit to
Ditech, FAC ¶¶ 52, 59, is speculative and should be rejected under *Twombly*, *see, e.g.*,
*Twombly*, 550 U.S. at 551, 557 (declining to take as true an allegation pled "upon
information and belief" without enough facts to make the allegation plausible); *Smith v.
City of Sumiton*, 578 F. App'x 933, 935 n. 4 (11th Cir. 2014) ("for purposes of a Rule
12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon

**C.     Plaintiff's FCCPA Claim Against Fannie Mae (Count II) Should Be Dismissed Because Fannie Mae Is Not Liable For Ditech's Conduct.**

Plaintiff's sole claim against Fannie Mae is an FCCPA claim based on Fannie Mae's supposed "vicarious liability" under Fla. Stat. Ann. § 559.72(9) for Ditech's allegedly "misleading" account statements that were an attempt to "enforce[ ], claim[ ], and assert[ ] a known non-existent legal right to a debt."  FAC ¶¶ 35-37, 83, 102(c),(d), 108, 122-124.  Plaintiff's FCCPA claim against Fannie Mae is independently flawed because: (1) Plaintiff fails to plead that Ditech is Fannie Mae's agent; and (2) Plaintiff fails to plead facts to support a vicarious liability theory of recovery under the FCCPA.

**1.     Ditech Is Not Fannie Mae's Agent.**

Fannie Mae is not liable for Ditech's alleged conduct because Ditech is not Fannie Mae's legal agent under Florida law[6]—and Plaintiff does not allege facts to support such a theory.  Under Florida law, agency requires:  "(1) acknowledg[ment] by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."  *Gillet v. Watchtower Bible & Tract Soc. of Pennsylvania, Inc.,* 913 So. 2d 618, 620 (Fla. Dist. Ct. App. 2005) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)).  An apparent agency exists only where there is (1) a representation by the principal to the plaintiff, that (2) causes the plaintiff to reasonably believe that an alleged agent is authorized to act for the principal's benefit, and which (3) induces the plaintiff's detrimental and justifiable

information and belief'"); *George & Co., LLC v. Alibaba.com, Inc.*, 2011 WL 6181940, at *3 (M.D. Fla. Dec. 13, 2011).

[6]     Per its terms, the Mortgage is governed by "federal law and the law of the jurisdiction in which the Property is located," which is Florida.  *See* FAC Ex. C, § 16.

reliance upon the appearance of an agency relationship.  *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

Here, Plaintiff alleges only the legal conclusion that Ditech is Fannie Mae's "agent" and that Ditech "accepted the authority and duties given by FNMA" without pleading facts to establish an actual or apparent agency relationship.  FAC ¶¶ 35-37, 70. The fundamental premise of Plaintiff's FAC is that Ditech independently engaged in conduct in contravention of the Fannie Mae Servicing Guide.  *Id.* ¶¶ 37-45, 70-73. Plaintiff does not allege that Fannie Mae directed or controlled any of Ditech's challenged conduct.  Indeed, the Fannie Mae Servicing Guide on which Plaintiff relies specifically states the opposite:  that loan servicers are independent contractors and not agents of Fannie Mae.  *See* 2015 Fannie Mae Single Family Servicing Guide § A2-1-01 (p. 75), *available at* https://www.fanniemae.com/content/guide/svc040815.pdf (cited in FAC ¶ 39).  Neither does Plaintiff allege any of the requirements for apparent agency to warrant a claim on that basis.  The "mere possibility" of an agency relationship is not enough.  *Twombly*, 550 U.S. at 557.  This Court should dismiss Plaintiff's FCCPA claim based on Plaintiff's failure to plead facts to support an agency theory of liability.

**2.      Plaintiff Fails To Plead Vicarious Liability Under The FCCPA.**

Even if Plaintiff had pled facts to support his legal conclusion that Ditech is Fannie Mae's agent (he has not), Plaintiff's attempt to hold Fannie Mae vicariously liable under Fla. Stat. Ann. § 559.72(9) for Ditech's allegedly deceptive account statements falls flat.

A debtor may bring an FCCPA claim against any person who "claim[s], attempt[s], or threaten[s] to enforce a debt when such person knows that the debt is not legitimate." Fla. Stat. Ann. § 559.72(9). The plain language of the statute makes clear that to state such a claim under the FCCPA, the plaintiff must allege that the defendant had actual knowledge that the debt was not legitimate. *Id.*; *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012); *Deutsche Bank Nat. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1115 (M.D. Fla. 2013).

Plaintiff fails to plead Fannie Mae's vicarious liability under the FCCPA for numerous reasons. First, Plaintiff's FCCPA claim against Fannie Mae is entirely derivative of Plaintiff's FCCPA claim against Ditech. *Compare* FAC ¶¶ 106-116, *with id.* ¶¶ 117-131. Plaintiff alleges that Ditech charged purported inspection fees in a manner at odds with the Fannie Mae Servicing Guide and solely for its own financial benefit. *Id.* ¶¶ 117-131. As explained above, however, Plaintiff's Mortgage permitted Ditech to charge inspection fees in the manner alleged, and any alleged failure to comply with the Fannie Mae Servicing Guide cannot form a basis for liability. *See supra* at pp. 10-11. Accordingly, Plaintiff's derivative FCCPA claim against Fannie Mae fails because Ditech's alleged conduct was not an attempt to collect a debt that was "not legitimate."

Second, Plaintiff's attempt to prop up its vicarious liability theory with bald legal conclusions fares no better. While Plaintiff cites to the unpublished, non-precedential decision in *Compass Bank v. Vanpelt*, 2015 WL 2433609 (Fla. Cir. Ct. 2015) for the legal

conclusion that Ditech's alleged knowledge of its improper inspection fees was imputed to its purported "principal," Fannie Mae (FAC ¶ 83), *Compass Bank* is inapposite.

In *Compass Bank*, the plaintiff brought an FCCPA claim against the owner of her mortgage debt and its agents because the debt owner filed a foreclosure suit against her and its agents sent her related collection letters despite the fact that she already paid off her mortgage.  *Compass Bank*, 2015 WL 2433609, at *1-2.  The trial court denied the debt owner's motion to dismiss because the plaintiff plausibly pled that the agents' knowledge that the debt was illegitimate could be imputed to the debt owner—which, in any event, had filed the foreclosure action in the first instance.  *Id.* at *2.  Similarly, in *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355 (S.D. Fla. 2000), which the *Compass Bank* court relied on in support of its ruling, the plaintiffs plausibly alleged facts to support their theory that the defendants had acted "jointly and in concert" in violation of the FCCPA.  *Kaplan*, 88 F. Supp. 2d at 1363.

Here, in contrast, Plaintiff alleges that even though Ditech was tasked with complying with the Fannie Mae Servicing Guide, Ditech "ignored" the Fannie Mae Servicing Guide and acted in a manner that did "nothing to protect FNMA's interest" by "order[ing] the property inspections not for the benefit of FNMA or the borrower, but solely for its own financial gain."  FAC ¶¶ 37, 43, 45, 47, 73, 111, 113.  These allegations are entirely different from the allegations on which the *Compass* and *Kaplan* courts based their decisions.

And with these allegations, Plaintiff pleads himself out of a claim against Fannie Mae based on an agency theory of liability because under Florida law, knowledge of an

agent is not imputed to its principal where the agent acts adversely to its principal.  *State, Dep't of Ins. v. Blackburn*, 633 So. 2d 521, 524 (Fla. Dist. Ct. App. 1994); Restatement (Third) of Agency § 5.04.

Plaintiff's repeated allegations that Ditech's conduct was adverse to Fannie Mae's interests and solely to garner a profit, FAC ¶¶ 37, 43, 45, 47, 73, 111, 113, render its FCCPA claim against Fannie Mae entirely implausible and contrary to Florida law, *see also, e.g.*,  *Bryant v. Geo Grp. Inc.*, 2017 WL 3316317, at *8 (M.D. Fla. Aug. 2, 2017) (dismissing claim due to plaintiff's unsupported legal conclusions); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) (dismissing claim because plaintiff's legal conclusions were at odds with his factual allegations); *Sigler v. Bradshaw*, 2015 WL 1044175, at *4 (S.D. Fla. Mar. 10, 2015) (dismissing claim based on plaintiff's "redundant and implausible" legal conclusions).

However stated, Plaintiff fails to plead Fannie Mae's purported vicarious liability under the FCCPA.  Therefore, Count II should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all of Plaintiff's claims, with prejudice, for failure to state a claim.

Date:  August 10, 2018

Respectfully submitted,

*/s/ Justin J. Kontul*
Perry A. Napolitano
Pa. I.D. No. 56789 (admitted *pro hac vice*)
pnapolitano@reedsmith.com
Justin J. Kontul
Pa. I.D. No. 206026 (admitted *pro hac vice*)
jkontul@reedsmith.com
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
T: (412) 288-3131 / F: (412) 288-3063

Edward M. Mullins (FBN# 863920)
REED SMITH LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
T: (786) 747-0203 / F: (786) 747-0299
emullins@reedsmith.com

*Counsel for Defendants Ditech Financial*
*LLC and Federal National Mortgage*
*Association*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including:

Darren R. Newhart
Consumer Law Organization, P.A.
721 US Hwy 1 Ste 201
North Palm Beach, FL 33408-4520
561/822-3446
Fax: 305/574-0132
Email: darren@cloorg.com

J. Dennis Card, Jr.
Consumer Law Organization, PA
721 US Hwy 1 Ste 201
North Palm Beach, FL 33408-4520
954-921-9994
Fax: 305-574-0132
Email: Dcard@consumerlaworg.com

James L. Kauffman
Bailey & Glasser LLP
1054 31st Street NW
Washington, DC 20007
202/462-2101
Fax: 202/463-2103
Email: jkauffman@baileyglasser.com

By:    */s/ Justin J. Kontul*
       *Counsel for Defendants*
       *Ditech Financial LLC and*
       *Federal National Mortgage*
       *Association*